GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@winthropcouchot.com
SEAN A. O'KEEFE – State Bar No. 122417
**WINTHROP COUCHOT**
**GOLUBOW HOLLANDER**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Fax: (949) 720-4111
Counsel to Modern Videofilm, Inc., debtor and
debtor-in-possession and plaintiff

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Modern Videofilm, Inc., a Delaware corporation,<br><br>            Debtor. | Case No.: 8:18-bk-11792-MW<br><br>Adv. No.:<br><br>Chapter 11 Proceeding |
| Modern Videofilm, Inc., a Delaware corporation,<br><br>            Plaintiff,<br><br>v.<br><br>Moshe Barkat, an individual; Modern VideoFilm Holdings, LLC, a Delaware limited liability company; Sidan Engineering, L.P., a California limited partnership, dba GB Engineering; Sivan Barkat Sherman, an individual; Danielle Barkat Turner, an individual; and Deborah Barkat, an individual<br><br>            Defendants. | **COMPLAINT FOR JUDGMENT 1) COMPELLING TURNOVER OF ESTATE PROPERTY; 2) AVOIDING PREFERENTIAL TRANSFER; 3) AVOIDING FRAUDULENT TRANSFERS; 4) RECOVERING AVOIDED TRANSFERS; 5) BREACH OF FIDUCIARY DUTY; AND 6) INJUNCTIVE RELIEF** |

1    Modern Videofilm, Inc., a Delaware corporation, the debtor and debtor-in-possession in the

2  above-entitled case (the "Debtor" or the "MVF"), hereby respectfully alleges and states as follows:

3    **JURISDICTION AND VENUE**

4    1.    MVF filed a petition under Chapter 11 of Title 11 of the United States Code on

5  May 18, 2018 (the "Petition Date"), initiating In re Modern Videofilm Inc., Case No.8:18-bk-

6  11792 MW (the "Bankruptcy Case").

7    2.    The claims in this adversary proceeding arise in and relate to the Bankruptcy Case.

8    3.    The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to

9  28 U.S.C. §§ 157 and 1334.

10    4.    This adversary proceeding is a core proceeding under, inter alia, 28 U.S.C.

11  §§ 157(b)(2)(A), (E), (F) and (H).

12    5.    If this adversary proceeding is determined to be a non-core proceeding, the Plaintiff

13  consents to the entry of final orders and judgments by the bankruptcy judge. The defendants are

14  hereby notified that Fed. R. Bankr. P. 7012(b) requires the defendants to admit or deny whether

15  this adversary proceeding is a core or non-core proceeding and, if non-core, to state whether the

16  defendants consent, or do not consent, to the entry of final orders or judgment by the bankruptcy

17  judge.

18    6.    This adversary proceeding is a civil proceeding arising in and related to the

19  Bankruptcy Case, and such case is pending before this Court. Accordingly, venue in this Court is

20  proper under 28 U.S.C. § 1409(a).

21    **PARTIES**

22    7.    MVF is the debtor and debtor-in-possession in the Bankruptcy Case.

23    8.    Defendant Moshe Barkat ("Barkat") is the former chairman of MVF's board of

24  directors and its chief executive officer.

25    9.    Defendant Modern Videofilm Holdings, LLC, a Delaware corporation

26  ("Holdings"), is an entity owned and controlled by Barkat that holds legal title to MVF's shares.

27    10.    Sidan Engineering, L.P., dba GB Engineering, is a California limited partnership

28  owned and controlled by Barkat ("GB Engineering").

233899

11. Holdings and GB Engineering are mere alter egos and instrumentalities of Barkat that were used to further effectuate the fraudulent acts described herein.

12. Defendant Deborah Barkat is Mr. Barkat's spouse ("Deborah Barkat").

13. Defendant Sivan Barkat Sherman is Mr. Barkat's daughter ("Sivan Sherman").

14. Danielle Barkat Turner is Mr. Barkat's daughter ("Danielle Turner").

### GENERAL ALLEGATIONS

### The Debtor

15. Barkat founded MVF in 1979.

16. MVF was in the business of providing post-production and distribution services to the motion picture, television and media content industries from its business location in Burbank, California.

17. Barkat served as the president, chief executive officer and chairman of the board of MVF until his removal in 2014.

### The Debtor's Insolvency

18. Like many entrepreneurs, Barkat was an effective salesman, but an incompetent, undisciplined and ultimately self-destructive manager.

19. Over time, Barkat's corporate mismanagement and serial looting of the corporate till rendered MVF insolvent.

20. The asset and liabilities figures set forth in the tables below were taken from MVF's balance sheets for the years referenced:

| Year | 2010 | 2011 | 2012 |
|---|---|---|---|
| Assets | $35,998,000 | $37,532,000 | $53,965,000 |
| Liabilities | ($75,936,000) | ($81,842,000) | ($97,327,000) |

| Year | 2013 | 2014 | 2015 |
|---|---|---|---|
| Assets | $48,368,000 | $38,043,000 | $13,859,000 |
| Liabilities | ($72,085,000) | ($78,061,000 | ($88,039,000) |

21. As the foregoing data confirms, MVF has been insolvent, from a balance sheet perspective, during the entirety of the seven-year reach back period provided for in California

Civil Code 3439.09(c), and in fact MVF's financials confirm that this entity has been consistently insolvent since 1999.

22.     MVF's operating results during the past decade also confirm its continuing insolvency from and operations perspective. As of 2010, MVF's accumulated operating deficit was approximately $50 million dollars and its revenues were in a state decline, thereby exacerbating this ongoing operational deficit.

23.     One of the precipitating factors in MVF steady march into the realm of insolvency was Barkat's serial looting of corporate cash. Barkat's fraudulent appropriations included the following:

A.  Excessive compensation (over $1.0 million per year in a number of years);

B.  Causing MVF to loan him over $4.0 million that he never repaid and never intended to repay;

C.  Charging MVF for $200,000 to $300,000 per year in purported business related travel and entertainment expenses;

D.  Causing MVF to transfer over $500,000 to GB Engineering for less than reasonably equivalent value;

E.  Causing MVF to make not less than $304,338 in payments to Sivan Sherman, his daughter, for less than reasonably equivalent consideration;

F.  Causing MVF to make not less than $264,381 in payments to Danielle Turner for less than reasonably equivalent consideration; and

G.  Causing MVF to make not less than $118,222 in payments to Deborah Barkat for less than reasonably equivalent consideration.

24.     As the below allegations detail, Barkat continued to deplete MVF's corporate assets for his own benefit, to the detriment of MVF's creditors, even after his employment was terminated in September of 2014.

25.     Due to Barkat's managerial incompetence and corporate looting, MVF has over one hundred million dollars ($100,000,000) in unpaid claims, and its only remaining assets are litigation claims of the kind alleged herein.

26.     MVF's liabilities have exceeded its market value for over ten years. Accordingly, at no point in time during the past decade has Holdings' shareholder interest in MVF had any realizable value, or any right to receive any distributions from the assets of this entity.

## The Medley Loan

27.     Approximately $80.0 million of the liabilities reflected on MVF's 2010 and 2011 balance sheet were secured loans owed to GE Capital Corporation (the "GE Loan").

28.     The GE Loan was in a default status from and after 2010, due to MVF's inability to pay off this loan on the agreed upon maturity date.

29.     When Barkat approached Medley Capital Corporation ("Medley Capital") seeking take-out financing for the GE Loan, Medley declined to advance this level of credit due to MVF's distressed financial state.

30.     A refinance only became possible after GE Capital agreed to reduce its loan balance by $30.0 million. But for this debt reduction, MVF would have either have been forced into a bankruptcy in 2012, or it would have been subject to a GE Capital foreclosure proceeding.

31.     In September of 2012, Medley and its affiliates made a $50.0 million loan to MVF (the "Medley Loan"). $48,200,000 of this loan paid off the defaulted and severely discounted GE Loan and provided MVF additional operating liquidity.

32.     Holdings guaranteed the repayment of the Medley Loan.

33.     The Medley Loan included strict compliance covenants due, in part, to MVF's distressed financial state. Instead of complying with these covenants, Barkat continued down the same path that had brought MVF to the brink of financial ruin. This course of conduct precipitated both monetary and covenant defaults under the terms of the Medley Loan.

34.     Medley entered into multiple forbearance agreements with MVF to afford the company the time to cure the defaults under the Medley Loan. However, the company was unable to achieve this end under Barkat's incompetent managerial stewardship.

35.     To protect its collateral from Barkat's ongoing mismanagement, Medley exercised its contractually authorized shareholder voting rights and removed Barkat from MVF's board of directors. Charles Sweet ("Mr. Sweet"), a highly experienced corporate manager, was elected to serve as MVF's sole director in Barkat's place.

36.     After his election to MVF board of directors, Mr. Sweet caused MVF to employ the services of Deloitte Corporate Restructuring Group ("Deloitte") to assist the ailing MVF with its turnaround effort. Scott Avila ("Avila"), a consultant employed by Deloitte, was appointed to serve as MVF's chief executive officer.

37.     Although Barkat was removed as MVF's director and CEO, Sweet continued Barkat's employment in the vain hope that Barkat would commit to playing a constructive and contributory role in MVF's turnaround effort. This did not occur. To the contrary, Barkat attempted to undermine Mr. Sweet's and Mr. Avila's authority.

38.     MVF was forced to terminate Barkat's employment in September of 2014.

39.     Medley continued to fund MVF's operations in the amount of approximately $15,292,061 for another year in an effort to turnaround its failing business. Unfortunately, this effort was unsuccessful.

40.     Medley was forced to foreclose upon MVF's assets in 2015. These assets were later sold to a buyer for a sum that was far less than the balance owed on the Medley Loan.

### The Barkat's Usurpation of MVF's Claims

41.     On May 29, 2015, Barkat and Holdings filed a complaint in California Superior Court for the County of Los Angeles entitled <u>Moshe Barkat and Modern VideoFilm Holdings, LLC v. Medley Capital Corporation, et.al.</u>, Case No BC583437 (the "Barkat Action").

42.    The following defendants were named in the Barkat Action: Medley Capital Corporation; Medley Opportunity Fund II LP; MCC Advisors LLC; Deloitte; Avila; Sweet and MVF (the "Barkat Action Defendants").

43.    Barkat purported to allege eight claims for relief in the First Amended Complaint filed in the Barkat Action. The following three claims, although without merit, were at least held by Barkat (the "Individual Claims"):

A.    <u>First Cause of Action</u>. In this claim, Barkat alleged that MVF breached his employment agreement when it terminated him for cause;

B.    <u>Second Cause of Action</u>. In this claim, Barkat alleged that Medley, Deloitte, Avila and Sweet intentionally interfered with his employment relationship with MVF, despite the fact that it was MVF that terminated Barkat through its lawfully appointed agent, Avila; and

C.    <u>Eighth Cause of Action</u>. In this claim, Barkat alleged that all of the Barkat Action Defendants had somehow defamed him through the letter terminating his employment with MVF, despite the fact that this letter was written and delivered to Barkat by an agent of MVF, acting on behalf of MVF.

44.    The five remaining claims alleged in the Barkat Action were not held by Barkat. They were corporate claims held by MVF (the "Corporate Claims") and they should have been pursued for the benefit of MVF's creditors, not for Barkat's personal enrichment.

45.    The Corporate Claims alleged in the First Amended Complaint filed in the Barkat Action were the following:

A.    <u>Third Cause of Action</u>. In this claim, Barkat alleges that Medley breached a duty purportedly owed to Barkat by, <u>inter alia</u>, interfering with an MVF customer transaction, installing incompetent agents to manage MVF's business, and authorizing said agents to take actions detrimental to MVF. These allegations confirm that the damages asserted in this claim, if any,

were suffered by MVF, not Barkat.[1] Accordingly, MVF, not Barkat holds this claim;

B. <u>Fourth Cause of Action</u>. In this claim, Barkat alleges that Deloitte and its employee, Mr. Avila, breached a purported duty owed to Barkat by, <u>inter alia</u>, taking excessive cash out of MVF, misrepresenting Deloitte's and Avila's experience in the post-production industry to the detriment of MVF, and taking actions that were detrimental to MVF. These allegations confirm that the damages alleged in this claim, if any, were suffered by MVF, not Barkat. Accordingly, MVF, not Barkat holds this claim;

C. <u>Fifth Cause of Action</u>. In this claim, Barkat alleges that Mr. Sweet breached a duty that he purportedly owed to Barkat by, <u>inter alia</u>, causing MVF to retain Deloitte, failing to properly supervise Deloitte and Mr. Avila in their capacities as agents for MVF, and taking actions that were detrimental to MVF. These allegations confirm that the damages asserted in this cause of action, if any, were suffered by MVF, not Barkat. Accordingly, MVF, not Barkat, holds this claim;

D. <u>Sixth Cause of Action</u>. In this claim, Barkat alleges that Medley aided and abetted Sweet, Deloitte and Avila's breach of the purported duty these defendants owed to Barkat by engaging in the conduct described in the Third, Fourth and Fifth Causes of Action, actions that inured to the direct detriment of MVF, not Barkat; and

E. <u>Seventh Cause of Action</u>. In this claim, Barkat contends he was damaged when Medley thwarted MVF's ability to enter into a venture with Technicolor. This venture was an MVF corporate opportunity, not a

---

[1] <u>H.F. Ahmanson & Co.</u>, 1 Cal.3d 93, 107 (1969) ("[A] stockholder of a corporation has no personal or individual right of action against third persons, including the corporation's officers and directors, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, since the wrong thus suffered by the stockholder is merely incidental to the wrong suffered by the corporation and affects all stockholders alike.").

Barkat opportunity. Any damages inuring from the destruction of this opportunity were suffered directly by MVF, not by Barkat.

46.    Barkat's objective in pursuing the Corporate Claims was to extract settlements from the defendants, or to obtain judgments against the same, and to retain for himself the proceeds derived from these corporate assets.

47.    The California Superior Court granted the demurrers (with leave to amend) filed by Deloitte, Avila and Sweet with respect to all of the claims and its granted Medley's demurrer as to the Fourth, Fifth and Seventh Claims.

48.    Notwithstanding the success of the demurrer, Deloitte and Avila entered into a settlement with Barkat pursuant to which Deloitte paid eight hundred thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($833,333.33) to Barkat and seven hundred forty-one thousand six hundred sixty-six dollars and sixty-seven cents ($741,666.67.00) to Barkat's counsel, Miller Barondess, LLP (together these payments ($1,575,000) are the "Deloitte Settlement").

49.    All or substantially all of the Deloitte Settlement was a payment in satisfaction of claims that were held by MVF. Notwithstanding this fact, Barkat and his counsel transferred the Deloitte Settlement to, or for the benefit of, Barkat (the "Deloitte Transfer").

**Holdings' and Barkat's Wrongful Taking of Derivative Claim Recovery**

50.    On August 29, 2016, Barkat caused Holdings to file second complaint in California Superior Court for the County of Los Angeles entitled <u>Modern VideoFilm Holdings, LLC, on behalf of Modern VideoFilm, Inc. v. Medley Capital Corporation, et. al.</u>, Case No BC631888 (the "Holdings Action").[2]

51.    The following defendants were named in the Holdings Action: Medley Capital Corporation; Medley Opportunity Fund II LP; MCC Advisors LLC; Richard Craybas; James Feeley; Congruent Credit Opportunities Fund II, LP; Congruent Investment Partners, LLC; Preston

---

[2] The Holdings Action was later consolidated with the Barkat Case.

Massey; Main Street Capital Corporation; Charles Sweet; Managease, Inc.; and Christina Woodward (the "Holdings Action Defendants").

52.    All of the claims alleged in the Holdings Action (the "Derivative Claims") are, by Holdings own admission, assets of MVF, and all of the damages alleged therein were suffered, if at all, by MVF. Accordingly, any proceeds obtained by Holdings or Barkat on account of the Derivative Claims were properly payable only to MVF.

53.    A shareholder who pursues a derivative action on behalf of a corporation acts as trustee for the corporation, and owes the corporation, in this case, MVF, a fiduciary duty as to this asset.

54.    Managease, Inc. ("Managease"), one of the Defendants in the Holdings Action, is a human resources consulting firm.

55.    Managease advised and assisted MVF with human resource related matters, such as state and federal labor law compliance, after the election of Mr. Sweet to MVF's board of directors.

56.    In the Fifth Cause of Action alleged in the Holdings Action (the "Managease Claim"), Holdings contended that Mangease had aided and abetted Mr. Sweet in his alleged violation of the fiduciary duty that Mr. Sweet *owed to MVF*, in his capacity as a director of MVF.

57.    The Managease Claim, like the rest of the Derivative Claims, was an asset of MVF. Accordingly, all proceeds payable in satisfaction of the damages alleged in this claim were properly payable to MVF.

58.    On July 31, 2017, Holdings entered into a settlement agreement with Managease pursuant to which either Managease, or an insurer that owing indemnity to this party, paid $2.0 million in settlement of the Managease Claim (the "Managease Settlement"). Barkat not only executed the Managease Settlement on his own behalf and on behalf of Holdings, he also purported to sign this agreement on behalf of MVF.

59.     Instead of remitting the Managease Settlement to MVF, the holder of the Managease Claim, Barkat paid $1,136,024.67 of this sum to himself, and paid the balance,

1  $863,975.33, to his counsel, Miller Barondess, LLP (the sum of the foregoing transfers is the

2  "Managease Transfer").

3       60.    MVF and its creditors did not receive a penny from the disposition of what was

4  clearly a corporate asset. Moreover, MVF's directors did not realize that Barkat had absconded

5  with this corporate asset until after he had already orchestrated and received the Managease

6  Transfer.

7  **FIRST CLAIM FOR RELIEF**

8  **(Against Barkat)**

9       61.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above

10  in support of this claim for relief.

11       62.    The Deloitte Settlement and the Deloitte Transfer are property of the estate.

12       63.    The Deloitte Transfer is in the possession of Barkat.

13       64.    Barkat is required to turnover the Deloitte Transfer to MVF pursuant to 11 U.S.C. §

14  542.

15  **SECOND CLAIM FOR RELIEF**

16  **(Against Barkat)**

17       65.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above

18  in support of this claim for relief.

19       66.    The Deloitte Transfer was made from the property of MVF.

20       67.    MVF did not receive reasonably equivalent value for the Deloitte Transfer.

21       68.    At the time when the Deloitte Transfer was made:

22       A.  MVF was insolvent as the sum of MVF's debts was greater than the value

23         all of MVF's property, determined at a fair valuation;

24       B.  MVF was engaged or was about to engage in a business or a transaction

25         for which MVF's remaining assets were unreasonably small in relation to

26         the business or transaction; and

27

28

C. MVF intended to incur, or it believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due thereafter.

69. The Deloitte Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## THIRD CLAIM FOR RELIEF

### (Against Barkat)

70. MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

71. The Deloitte Transfer was made from property of MVF.

72. The Deloitte Transfer was made with the intent to hinder, delay or defraud MVF's creditors.

73. The Deloitte Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

## FOURTH CLAIM FOR RELIEF

### (Against Barkat and Holdings)

74. MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

75. The Deloitte Transfer was made from property of MVF.

76. MVF did not receive reasonably equivalent value for the Deloitte Transfer.

77. At the time when the Deloitte Transfer was made:

A. MFV was insolvent as the sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation;

B. MVF was engaged or was about to engage in a business or a transaction for which MVF's remaining assets were unreasonably small in relation to the business or transaction; and

C. MVF intended to incur, or it believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due thereafter.

78. The Deloitte Transfer is avoidable pursuant to 11 U.S.C. § 544 and sections 3439.04(a)(2) and 3439.05 of the California Civil Code.

## FIFTH CLAIM FOR RELIEF

### (Against Barkat)

79. MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

80. The Managease Settlement and the Managease Transfer are property of the estate.

81. The Managease Transfer is in the possession of Barkat.

82. Barkat is required to turnover the Managease Transfer to MVF pursuant to 11 U.S.C. § 542.


## SIXTH CLAIM FOR RELIEF

### (Against Barkat and Holdings)

83. MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

84. The Managease Transfer was made from property of MVF.

85. Barkat and Holdings were "insiders" of MVF, as that term is defined in 11 U.S.C. § 101(31), when the Managease Transfer was made.

86. The Managease Transfer was made within one year of the Petition Debt.

87. The Managease Transfer was made to or for the benefit of both Barkat and Holdings.

88. The Managease Transfer was made on account of the disputed antecedent claims asserted by Barkat and Holdings.

89.     The sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation, when the Managease Transfer was made. Accordingly, MVF was insolvent when such transfer was made.

90.     The Managease Transfer enabled Barkat and Holdings to receive more than such alleged creditors would have received in a case filed under Chapter 7 of the bankruptcy code.

91.     The Managease Transfer is avoidable pursuant to 11 U.S.C. § 547.

## SEVENTH CLAIM FOR RELIEF

### (Against Barkat and Holdings)

92.     MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

93.     The Managease Transfer was made from the property of MVF.

94.     MVF did not receive reasonably equivalent value for the Managease Transfer.

95.     At the time when the Managease Transfer was made:

    A. MFV was insolvent as the sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation;

    B. MVF was engaged or was about to engage in a business or a transaction for which MVF's remaining assets were unreasonably small in relation to the business or transaction; and

    C. MVF intended to incur, or it believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due thereafter.

96.     The Managease Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## EIGHTH CLAIM FOR RELIEF

### (Against Barkat and Holdings)

97.     MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

98.     The Managease Transfer was made from property of MVF.

99.    The Managease Transfer was made with the intent to hinder, delay or defraud MVF's creditors.

100.    The Managease Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(A).

### NINTH CLAIM FOR RELIEF

**(Against Barkat and Holdings)**

101.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

102.    The Managease Transfer was made from property of MVF.

103.    MVF did not receive reasonably equivalent value for the Managease Transfer.

104.    At the time when the Managease Transfer was made:

    A.    MVF was insolvent as the sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation;

    B.    MVF was engaged or was about to engage in a business or a transaction for which MVF's remaining assets were unreasonably small in relation to the business or transaction; and

    C.    MVF intended to incur, or it believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due thereafter.

105.    The Managease Transfer is avoidable pursuant to 11 U.S.C. § 544 and sections 3439.04(a)(2) and 3439.05 of the California Civil Code.

### TENTH CLAIM FOR RELIEF

**(Against Barkat and Holdings)**

106.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

107.    The Managease Transfer was made from property of MVF.

108.    The Managease Transfer was made with the intent to hinder, delay or defraud MVF's creditors.

1    109.   The Managease Transfer is avoidable pursuant to 11 U.S.C. § 544 and section

2  3439.04(a)(1) of the California Civil Code.

3                          **ELEVENTH CLAIM FOR RELIEF**

4                          **(Against Barkat and Holdings)**

5    110.   MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above

6  in support of this claim for relief.

7    111.   When Holdings and Barkat undertook to pursue the derivative claims alleged in the

8  Holdings Case and the Corporate Claims alleged in the Barkat Case, they assumed the status of

9  trustees acting for the benefit of MVF, with respect to such claims, and in such capacities, they

10  owed MVF a fiduciary duty.

11    112.   When Holdings and Barkat authorized and made the Managease Transfer and the

12  Deloitte Transfer, they breached the fiduciary duty they owed to MVF and caused MVF to suffer

13  damages in the amount of such transfers, and in the amount of all fees and costs incurred in

14  recovering the same.

15

16

17                          **TWELFTH CLAIM FOR RELIEF**

18                          **(Against Barkat and Holdings)**

19    113.   MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above

20  in support of this claim for relief.

21    114.   The Corporate Claims constitute property of MVF's estate pursuant to 11 U.S.C. §

22  541.

23    115.   The Derivative Claims constitute property of MVF's estate pursuant to 11 U.S.C. §

24  541.

25    116.   To the extent that either Barkat or Holdings continues to pursue either the

26  Corporate Claims or the Derivative Claims after the Petition Date, this will constitute a violation of

27  the automatic stay pursuant to, inter alia, 11 U.S.C. § 362(a)(3).

28

117.   To the extent Barkat or Holdings continue to pursue either the Corporate Claims or the Derivative Claims after the Petition Date, MVF will be irreparably harmed for the following reasons:

    A.  Barkat and Holdings are pursuing these claims solely for their own benefit not for the benefit of the creditors;

    B.  Barkat and Holdings will appropriate any proceeds derived from the Corporate Claims and the Derivative Claims for their own benefit;

    C.  A material risk exists that Barkat will transfer any proceeds that he receives on the Corporate and Derivative Claims to a place outside the jurisdictional reach of this Court; and

    D.  The bankruptcy code vests title and control over the Corporate Claims and the Derivative Claims in the bankruptcy estate and the pursuit of these claims vitiates the benefits accorded to MVF and its creditors by the bankruptcy code.

118.   If and to the extent that either Barkat or Holdings continue to pursue the Corporate Claims and the Derivative Claim after the Petition Date, MVF will seek, in reliance upon the allegations in this claim, injunctive relief pursuant to Federal Rule of Bankruptcy Procedure 7065 adopting Federal Rule of Civil Procedure 65, and 11 U.S.C. § 105.

## THIRTEENTH CLAIM FOR RELIEF

### (Against Sivan Barkat Sherman)

119.   MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

120.   Defendant Sivan Sherman received sixty-one thousand five hundred thirty eight dollars ($61,538) in transfers from MVF in calendar year 2014 (the "2014 Sivan Sherman Transfers").

121.   The 2014 Sivan Sherman Transfers were made from property of MVF.

122.   At the time when the 2014 Sivan Sherman Transfers were made:

A. MVF was insolvent as the sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation;

B. MVF was engaged or was about to engage in a business or a transaction for which MVF's remaining assets were unreasonably small in relation to the business or transaction; and

C. MVF intended to incur, or it believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due thereafter.

123. The 2014 Sivan Sherman Transfers were made within four years of the Petition Date.

124. The Sivan Sherman Transfers are avoidable pursuant to 11 U.S.C. §544 and sections 3439.04(a)(2) and 3439.05 of the California Civil Code.

## FOURTEENTH CLAIM FOR RELIEF

### (Against Sivan Barkat Sherman)

125. MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

126. In addition to the 2014 Sivan Sherman Transfers, Defendant Sivan Sherman received fifty eight thousand four hundred sixty one dollars ($58,461) in transfers from MVF in 2013, forty thousand ($40,000) in 2012, and forty thousand ($40,000) in 2011 (collectively the foregoing are the "Sivan Sherman Transfers").

127. The Sivan Sherman Transfers were made from property of MVF.

128. The Sivan Sherman Transfers were made with the intent to hinder, delay or defraud MVF's creditors.

129. Sivan Sherman Transfers are avoidable pursuant to 11 U.S.C. §544 and section 3439.04(a)(1) of the California Civil Code.

## FIFTEENTH CLAIM FOR RELIEF

### (Against Danielle Barkat)

130.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

131.    Defendant Danielle received fifteen thousand three hundred and eighty-four dollars ($15,384) in transfers from MVF in calendar year 2014 (the "2014 Danielle Turner Transfers").

132.    The 2014 Danielle Turner Transfers were made from MVF property.

133.    At the time when the 2014 Danielle Turner Transfers were made:

    A.  MVF was insolvent as the sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation.

    B.  MVF was engaged or was about to engage in a business or a transaction for which MVF's remaining assets were unreasonably small in relation to the business or transaction.

    C.  MVF intended to incur, or it believed or reasonably should have believed that the it would incur, debts beyond its ability to pay as they became due thereafter.

134.    The 2014 Danielle Turner Transfers that were made within four years of the Petition Date.

135.    The 2014 Danielle Turner Transfers are avoidable pursuant to 11 U.S.C. §544 and sections 3439.04(a)(2) and 3439.05 of the California Civil Code.

## SIXTEENTH CLAIM FOR RELIEF

### (Against Danielle Barkat)

136.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

137.    In addition to the 2014 Danielle Turner Transfers, Defendant Danielle Turner received seven thousand six hundred nine-two dollars ($7,692) in transfers from MVF in 2013 and forty thousand five hundred ($40,500) in 2011 (collectively the foregoing are the "Danielle Turner Transfers").

138.    The Danielle Turner Transfers were made from MVF property.

139.   The Danielle Turner Transfers were made with the intent to hinder, delay or defraud MVF's creditors.

140.   The Danielle Turner Transfers are avoidable pursuant to 11 U.S.C. §544 and section 3439.04(a)(1) of the California Civil Code.

## SEVENTEENTH CLAIM FOR RELIEF

### (Against Deborah Barkat)

141.   MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

142.   Defendant Deborah Barkat received twelve thousand dollars ($12,000) in transfers from MVF in calendar year 2014 (the "2014 Deborah Barkat Transfers").

143.   The 2014 Deborah Barkat Transfers were made from MVF property.

144.   At the time when the 2014 Deborah Barkat Transfers were made:

A.  MVF was insolvent as the sum of MVF's debts was greater than the value all of MVF's property, determined at a fair valuation.

B.  MVF was engaged or was about to engage in a business or a transaction for which MVF's remaining assets were unreasonably small in relation to the business or transaction.

C.  MVF intended to incur, or it believed or reasonably should have believed that the it would incur, debts beyond its ability to pay as they became due thereafter.

145.   The 2014 Deborah Barkat Transfers were made within four years of the Petition Date.

146.   The 2014 Deborah Barkat Transfers are avoidable pursuant to 11 U.S.C. §544 and sections 3439.04(a)(2) and 3439.05 of the California Civil Code.

## EIGHTTEENTH CLAIM FOR RELIEF

### (Against Deborah Barkat)

147.    MVF hereby realleges and restates the allegations in paragraphs 1 through 60 above in support of this claim for relief.

148.    In addition to the 2014 Deborah Barkat Transfers, Defendant Deborah Barkat received fifteen thousand six hundred dollars ($15,600) in transfers in each of the following years —2013, 2012 and 2011, and (collectively the "Deborah Barkat Transfers").

149.    The Deborah Barkat Transfers were made from MVF property.

150.    The Deborah Barkat Transfers were made with the intent to hinder, delay or defraud MVF's creditors.

151.    The Deborah Barkat Transfers are avoidable pursuant to 11 U.S.C. §544 and section 3439.04(a)(1) of the California Civil Code.

## NINETEENTH CLAIM FOR RELIEF

### (Against Barkat, Holdings, Sivan Sherman, Danielle Barkat and Deborah Barkat)

152.    The Trustee hereby realleges and restates the allegations in paragraphs 1 through 129 above in support of this claim for relief.

153.    The avoidable transfers described in First through the Fifth Claims for Relief, and the Seventh through the Twelfth Claim for Relief should be avoided, recovered and preserved for the benefit of the estate as provided in 11 U.S.C. § 551.

## TWENTIETH CLAIM FOR RELIEF

### (Injunction)

154.    The Trustee hereby realleges and restates the allegations in paragraphs 1 through 153 above in support of this claim for relief.

155.    Pursuant to Section 3439.07 of the California Civil Code, made applicable pursuant to 11 U.S.C. § 544, and Federal Rule of Bankruptcy Procedure 7065 adopting Federal Rule of Civil Procedure 65, the Trustee is entitled an injunction barring Barkat, Holdings, and any

employee, agent, or party acting on their behalf, from further transferring the Deloitte Transfer and the Managease Transfers.

156.    The issuance of a preliminary injunction freezing all bank and securities accounts held in the name of Barkat and Holdings, or held in the name of a third party for the benefit of either Barkat or Holdings, to the extent necessary to prevent further transfers of the funds attributable to the Deloitte Transfer and the Managease Transfer, is necessary and justified on the following grounds:

A. The allegations in this complaint establish that MVF is entitled to avoid and recover the Deloitte Transfer and the Managease Transfer;

B. Barkat's and Holding's past and ongoing course of conduct confirms that they have looted, and will continue to loot the assets of MVF for their own benefit;

C. If the proceeds of the Deloitte Transfer and the Managease Transfer are not frozen, it is likely that Barkat will transfer these proceeds to financial institutions in other countries, or disperse these funds among friends and family members, thereby irreparably harming MVF and its creditors;

D. By fraudulently signing the Managease Settlement on behalf of MVF, and then appropriating the Managease Transfer for himself, Barkat has proven that he is willing to take whatever actions are necessary, illegal or otherwise, to enrich himself at the expense of MVF's creditors;

E. Since Barkat admitted in the Derivative Action that the Managease Settlement was MVF's property, he has no grounds for objecting to an injunction that bars him from further transferring property that he does not own; and

1         F.  The Court should not allow Barkat to deprive the Court of jurisdiction

2        over the assets of MVF through further unlawful transfers; and

3            **PRAYERS FOR RELIEF**

4            **First Claim For Relief**

5  For a judgment ordering Barkat to turnover to the estate the $1,575,000 Deloitte Transfer.

6            **Second Claim For Relief**

7  For a judgment avoiding the Deloitte Transfer.

8            **Third Claim For Relief**

9  For a judgment avoiding the Deloitte Transfer.

10            **Fourth Claim For Relief**

11  For a judgment avoiding the Deloitte Transfer.

12            **Fifth Claim For Relief**

13  For a judgment ordering Barkat to turnover to the estate the $2.0 million Managease

14  Transfer.

15            **Sixth Claim For Relief**

16  For a judgment avoiding the transfer of the Managease Settlement to Barkat.

17            **Seventh Claim For Relief**

18  For a judgment avoiding the transfer of the Managease Settlement to Barkat.

19            **Eighth Claim For Relief**

20  For a judgment avoiding the transfer of the Managease Settlement to Barkat.

21            **Ninth Claim For Relief**

22  For a judgment avoiding the transfer of the Managease Settlement to Barkat.

23            **Tenth Claim For Relief**

24  For a judgment avoiding the transfer of the Managease Settlement to Barkat.

25            **Eleventh Claim For Relief**

26  For a damage judgment against Barkat and Holdings in the amount of the Deloitte Transfer

27  and the Managease Transfer.

28

**<u>Twelfth Claim For Relief</u>**

For a judgment enjoining further pursuit of the Corporate Claims and the Derivative Claims.

**<u>Thirteenth Claim For Relief</u>**

For a judgment avoiding the 2014 Sivan Sherman Transfers.

**<u>Fourteenth Claim For Relief</u>**

For a judgment avoiding the Sivan Sherman Transfers.

**<u>Fifteenth Claim For Relief</u>**

For a judgment avoiding the 2014 Danielle Turner Transfers.

**<u>Sixteenth Claim For Relief</u>**

For a judgment avoiding the Danielle Turner Transfers.

**<u>Seventeenth Claim For Relief</u>**

For a judgment avoiding the 2014 Deborah Barkat Transfers.

**<u>Eighteenth Claim For Relief</u>**

For a judgment avoiding the Deborah Barkat Transfers.

**<u>Nineteenth Claim For Relief</u>**

For a judgment recovering the Deloitte Transfer, the Managease Transfer, the Sivan Sherman Transfers, the Danielle Turner Transfers and the Deborah Barkat Transfers.

**<u>Twentieth Claim for Relief</u>**

For the issuance of injunctive relief freezing all accounts held by or for the benefit of Barkat and Holdings at any and all financial institutions, during the pendency of this action, up to the amount of funds necessary to secure full payment of the judgment amount sought herein.

**<u>All Claims For Relief</u>**

An award of attorney's fees and costs on all claims for relief, and such other relief as the Court deems just and proper.

DATED: May 16, 2018

**WINTHROP COUCHOT
GOLUBOW HOLLANDER, P.C.**

By: _____

    Garrick A. Hollander
    Sean A. O'Keefe
Counsel to Modern VideoFilm, Inc.,
debtor and debtor-in-possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street, Suite 500 Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: COMPLAINT FOR JUDGMENT 1) COMPELLING TURNOVER OF ESTATE PROPERTY; 2) AVOIDING PREFERENTIAL TRANSFER; 3) AVOIDING FRAUDULENT TRANSFERS; 4) RECOVERING AVOIDED TRANSFERS; 5) BREACH OF FIDUCIARY DUTY; AND 6) INJUNCTIVE RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) May 16, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**2. SERVED BY UNITED STATES MAIL**:
On (date) May 16, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/16/2018 | Stacy Ly | /s/ Stacy Ly |
|-----------|--------------|--------------|
| Date | Printed Name | Signature |